CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
APR 10 2023
LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| ALEXANDER CRICHLOW, ) <br> ) <br>    Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HAROLD W. CLARKE, ) <br> Director, Virginia Department of ) <br> Corrections, *et al.*, ) <br> ) <br>    Defendants. ) | Civil Action No. 4:23-cv-00006 <br><br> By: Elizabeth K. Dillon <br>     United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alexander Crichlow is currently an inmate at Green Rock Correctional Center in Chatham, Virginia. He brings this action against several officials at the Virginia Department of Corrections ("VDOC"), claiming that defendants' refusal to place him on Green Rock's "Ramadan Accommodations List" violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a).

Pending before the court is Crichlow's motion for a temporary restraining order and preliminary injunction. (Dkt. No. 2.) Because defendants had notice and were represented, the court considers the motion as one for a preliminary injunction. The court held a hearing on April 7, 2023, and the matter is ripe for resolution. Because Crichlow failed to exhaust administrative remedies prior to seeking judicial relief, the court will deny the motion.

I.  BACKGROUND[1]

To accommodate Muslim inmates observing Ramadan (which began on March 22, 2023, and runs until about April 21), prison officials at Green Rock are distributing meals before dawn and at sunset and are allowing Muslim inmates to briefly congregate together in the evening for prayer.  A statewide policy—Chief of Corrections Operations Memorandum 086-2022—set a November 18, 2022 deadline for inmates at VDOC facilities to request that their names be added to the list of individuals who would receive this accommodation during Ramadan (the "Ramadan Accommodations List" or "List").

Crichlow alleges that he converted to Islam in January 2023, after the deadline to be considered for participation.[2]  On four different occasions between his conversion to Islam in January and the beginning of Ramadan in late March, Crichlow submitted his name to defendant Chaplain Douglas Huff and requested that it be added to the List.  Each time, Chaplain Huff declined Crichlow's request, citing the statewide November 2022 deadline for Muslim VDOC inmates to request accommodations for Ramadan.  This was a clear denial with no equivocation about any possible change to the policy.  Crichlow never pursued a grievance challenging any of the four rejections from Chaplain Huff.   Then, a few days into Ramadan, Crichlow submitted an

---

[1] The background herein is taken from unverified allegations in the complaint, plaintiff's declaration that is not sworn and not signed under penalty of perjury, and proffers by counsel at the hearing.  The court finds it proper to rule on this limited record.  *See, e.g., Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.").

[2] According to defense counsel, it appears that Crichlow may have designated himself to be a Muslim in April 2022, changed his designation to Moorish Science Temple of America in January 2023, and then switched back to Muslim in April 2023.

emergency grievance to Chaplain Huff, which was also rejected within a few hours. In his written explanation for the decision, Chaplain Huff stated:

> The Chief of Corrections Operations Memorandum Number 086-2022, which addresses Ramadan 2023, does not make provision to participate in Ramadan for those who choose to convert to Islam after the open enrollment deadline of the quarter in which sign up for Ramadan occurs. It states "VA DOC inmates who sign up for any of the religious activities eligible to observe Ramadan 2023 after the November 18, 2022 sign up will not be able to participate until 2024."[3]

Defense counsel understands that Crichlow has recently filed a regular grievance.

Ever since the rejection of his emergency grievance, Crichlow has been fasting from dawn until sunset in accordance with his beliefs, but because his name is not on the List, officials at Green Rock have refused to serve him his meals when he is not fasting, even though Green Rock is serving pre-dawn and at-sunset meals to other fasting Muslims. Crichlow has been provided with a post-sunrise breakfast, which he does not eat, and he saves his dinner, served around 4:00 p.m. each day (i.e., before sunset), until after sunset. He supplements his meal with commissary food that he purchases. Additionally, because his name is not on the List, Crichlow has been forbidden from participating in congregational prayer and meals breaking the fast with the other Muslims at Green Rock; rather, he observes Ramadan alone.

## II. ANALYSIS

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the

---

[3] Crichlow alleges that the policy was promulgated by defendant A. David Robinson in role as the Chief of Corrections Operations for VDOC.

burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that . . . interest." RLUIPA § 3(a), 42 U.S.C. § 2000cc–1(a).

Here, Crichlow seeks a preliminary injunction enjoining defendants from enforcing the sign-up deadline set by Chief of Corrections Operations Memorandum 086-2022 and requiring them to add his name, and the names of others, to the Ramadan Accommodations List upon request. To obtain preliminary injunctive relief, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

Upon review of the motion, the court finds that even if Crichlow could demonstrate that the latter three factors support preliminary injunctive relief, there is no likelihood that he can succeed on the merits because he has not exhausted his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). Pursuant to the PLRA, a prisoner bringing an action with respect to prison conditions under any federal law must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a) (providing that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted."). Exhaustion as provided in § 1997(e)(a) is mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and is required even when the relief sought is not available. *Porter v. Nussle*, 534

4

U.S. 516, 524 (2002); *Booth*, 532 U.S. at 741. All available administrative remedies must be exhausted *prior* to filing a complaint in federal court. *See Porter*, 534 U.S. at 524 (citing *Booth*, 532 U.S. at 741) (emphasis added). Further, under the PLRA, prisoners are required not only to initiate timely grievances but also to timely appeal any *rejection* of such grievances through all levels of available administrative review. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Lastly, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 91.

Here, defendants assert the affirmative defense of failure to exhaust administrative remedies. Green Rock follows the grievance procedure set out in VDOC's Operating Procedure ("OP") 866.1, to which procedure the parties stipulate. To exhaust administrative remedies in a VDOC facility under OP 866.1, an inmate must file an informal complaint, a regular grievance that is accepted at intake, and an appeal, in that order. When an inmate files an informal complaint, the grievance department issues a receipt. If no response is given to the informal complaint within 15 days, the inmate may proceed to file a regular grievance but must attach the informal complaint receipt to it. A regular grievance must be filed within 30 days of the incident giving rise to the complaint. When an inmate files a regular grievance, it is either accepted or rejected at intake. If accepted, the grievance department issues a receipt. If rejected, the grievance is returned to the inmate with indication of the reason for the rejection. If there is still time remaining on the 30-day deadline, the inmate may cure the deficiency (if possible) and refile. If the inmate is unsatisfied with an accepted grievance's response or no response is given to the grievance within 30 days, the inmate may proceed to file an appeal. In most cases, this appeal is the final level of review. Relatedly, if a situation or condition in prison poses an

immediate risk of serious, irreparable harm, an inmate can file an "emergency grievance," to which prison officials must respond within eight hours of receipt. But if the emergency grievance is not resolved to the inmate's satisfaction, there is no immediate appeal process; instead, that emergency grievance must be refiled as a "regular grievance," which would then proceed in the course described above. In other words, regardless of how the grievance originates, the exhaustion requirement is met only when an inmate submits and then appeals a regular grievance, without satisfactory resolution of the issue.

Crichlow did not do so. He incorrectly concludes that he "has exhausted Green Rock's grievance process" because, "now that Chaplain Huff has rejected his emergency grievance, he has nowhere else to turn except this Court." (Dkt. No. 2 at 5.) That rejection, however, does not exhaust his administrative remedies. On the contrary, it appears that Crichlow never filed, or only very recently filed, a regular grievance in relation to the denial of any of his requests to Chaplain Huff. At the hearing, plaintiff's counsel represented that he never pursued the grievance process for any of his requests to be added to the List because he hoped that the Green Rock officials would instead "see reason" and simply grant his subsequent request. That justification, even if well intentioned, is insufficient to sidestep the exhaustion requirement.

Upon rejection of his emergency grievance and under OP 866.1, the next step was to continue with the exhaustion procedure by filing a regular grievance and, if that was resolved unfavorably, an appeal of that regular grievance. Instead, rather than challenge the denial of his emergency grievance, Crichlow proceeded directly to this court. In doing so, he departed from VDOC's well-established procedure for exhaustion of administrative remedies. The court cannot now bypass that procedure by providing him preliminary injunctive relief.

6

Lastly, at the hearing, Crichlow argued that he was not required to exhaust administrative remedies because the administrative process was not "available" to him. The Supreme Court has held that the exhaustion requirement "hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (brackets omitted). A remedy is "available" when it is "'capable of use' to obtain 'some relief for the action complained of.'" *Id*. (quoting *Booth*, 523 U.S. at 738. Conversely, a remedy is not available when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Woodhouse v. Duncan*, 741 F. App'x 177, 178 (4th Cir. 2018) (quoting *Ross*, 578 U.S. at 643–44). "When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy." *Ross*, 578 U.S. at 643. Crichlow cites to no cases where a procedure is unavailable just because it takes time, especially where plaintiff failed to file a grievance for so long because of a hope that something would change. Thus, Crichlow has not shown that the procedure was unavailable for purposes of excluding compliance with the grievance procedure.

Because, on the record before the court, Crichlow failed to adequately exhaust administrative remedies as defined by VDOC's operating procedures before seeking judicial relief and there is no indication that the process was otherwise "unavailable" to him under the PLRA, the court finds that Crichlow has failed to show that there is a likelihood of success on the merits. Thus, his request for a preliminary injunction will be denied.

## III. CONCLUSION AND ORDER

For the foregoing reasons, it is HEREBY ORDERED that Crichlow's motion for temporary restraining order and preliminary injunction (Dkt. No. 2) is DENIED. The clerk is directed to send a copy of this memorandum opinion and order to all counsel of record.

Entered: April 10, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge